AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue iPhone 12<br>Case Number: SYS-25-12-0751<br>("Target Device") | ) ) ) ) ) ) Case No. 26mj29 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8 U.S.C., Sec. 1324 | Bringing in aliens for financial gain |
| Title 8 U.S.C., Sec. 2 | Aiding and abetting |

The application is based on these facts:
See Attached Affidavit of CBP Enforcement Officer Desirae M. Zavala, U.S. Customs and Border Protection, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Desirae M. Zavala, U.S. CBP Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means).*

Date: 01/02/2025

*Judge's signature*

City and state: San Diego, California     HON. STEVE B. CHU, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Desirae M. Zavala, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant to search the following electronic device:

> Blue iPhone 12
> Case Number: SYS-25-12-0751
> ("**Target Device**")

as further described in Attachment A, and to seize evidence of crime, specifically, violations of Title 8, United States Code, Section 1324 (a)(2)(B)(ii) and Title 18, United States Code, Section 2 (Bringing in Aliens for Financial Gain and Aiding and Abetting), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Cesar PEREZ (Defendant) for Bringing in Aliens into the United States for Financial Gain and Aiding and Abetting. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, California.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by U.S. Customs and Border Protection since 2019 and am currently assigned to the San Ysidro, California Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center

1

in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for approximately six years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities,

including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications,

3

photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to bring in aliens without lawful status for private financial gain or commercial advantage from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to bring in aliens without lawful status for private financial gain or commercial advantage;

   c. tending to identify co-conspirators, criminal associates, or others involved in the bringing in of aliens without lawful status for private financial gain or commercial advantage;

   d. tending to identify travel to or presence at locations, such as stash houses, load houses, or delivery points involved in the bringing in aliens without lawful status for private financial gain or commercial advantage;

   e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

11. On Wednesday, December 31, 2025, at approximately 10:22 P.M., Cesar PEREZ (Defendant) applied for admission into the United States from Mexico via the San

4

Ysidro, California, Port of Entry vehicle primary lanes. Defendant was the driver and sole visible occupant of a grey Ford Mustang bearing California plates. Upon inspection before a United States Customs and Border Protection (CBP) Officer, Defendant presented his interim driver's license and cell phone containing a photo of his California state issued driver's license. While the CBP Officer was in possession of the phone, Defendant received a text message stating "hey is everything okay?". Defendant was handed his cellphone and CBP Officer continued with his inspection. Defendant stated he was destined to Yucaipa, California and declared clothing in the trunk of the vehicle. The CBP Officer conducted a cursory inspection of the vehicle and discovered an adult male siting directly behind Defendant, concealed underneath articles of clothing. The CBP Officer asked Defendant the following three questions; Has anyone asked you to bring anything to Mexico? Defendant responded "No." Has anyone asked you to bring anything into the United States? Defendant responded "No." Other than yourself, has anyone else been in control of this vehicle in the past three days? Defendant responded "No." The CBP Officer radioed for assistance. Defendant was secured and escorted to the Security Office for initial processing and further investigation. The vehicle was taken to the secondary inspection area for further disposition.

12. In secondary, CBP Officers assisted in removing one adult male who was concealed underneath articles of clothing in the rear seat directly behind the driver's seat of the grey Ford Mustang. The male individual was escorted to the security office where he was queried by 10-print and photograph comparison through the Automated Biometric Identification System (IDENT) and the Integrated Automated Fingerprint Identification System (IAFIS), linking him to Department of Homeland Security (DHS) records identifying him as Jorge CHAVEZ-Hernandez (Material Witness).

13. On Wednesday December 31, 2025, at approximately 11:23 P.M., during a video recorded interview, Defendant was advised of his Miranda rights and elected to make a statement. Defendant stated he drove from Yucaipa, California to Tijuana, Mexico on December 31, 2025, at approximately 12 P.M. Defendant stated he showed up to his

5

relative's house unannounced. Defendant stated he does not have contact information for his relatives in Mexico. Defendant denied being in contact with anyone or texting anyone while in Mexico. Defendant denied knowledge of anyone else in his vehicle.

14. On Wednesday, December 31, 2025, at approximately 11:23 P.M., during a video recorded interview, MW stated he was taken to an OXXO where he was instructed by a smuggling coordinator that a driver would be arriving shortly in a sports car. MW was instructed to cover his face and position himself directly behind the driver's seat. Approximately 5 minutes later, two males got into the driver's seat and front passenger seats of the vehicle. The two males were communicating in English. MW claims the vehicle got a flat tire and both males exited the vehicle. MW stated a third male showed up to help change the tire. Once the two males entered the vehicle again, MW stated he asked to use the restroom and was denied his request by the male sitting in the passenger seat. MW claims the vehicle was in motion for approximately 5 minutes before the male passenger exited the vehicle and told him, "you better not move" in the Spanish language. MW claims the passenger communicated this to him while Defendant was present. MW was destined to Dallas, Texas to work and live. MW stated he was going to pay approximately $7,500 USD as a smuggling fee upon arrival to Dallas, Texas.

15. The **Target Device** was discovered within Defendant's personal property during inventory. During the video-recorded interview, Defendant claimed ownership of **Target Device**. The **Target Device** was subsequently seized and is now being held as evidence by Customs and Border Protection.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Device** to communicate with others to further the smuggling of illegal aliens

into the United States. Further, in my training and experience, alien smugglers may be involved in the planning and coordination of transporting and smuggling events in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the aliens. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on December 17, 2025, up to and including December 31, 2025.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones, tablets, and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and

record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement has not attempted to extract data from the **Target Device**. Law enforcement is now seeking to obtain evidence in the **Target Device** through this warrant.

## CONCLUSION

21. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324 and Title 18 United States Code, Section 2, Aiding and Abetting.

22. Accordingly, I request that the Court issue warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Desirae M. Zavala, CBP Officer
U.S. Customs and Border Protection

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, on January 2, 2026.

HON. STEVE B. CHU
UNITED STATES MAGISTRATE JUDGE

9

# ATTACHMENT A
## PROPERTY TO BE SEARCHED

The following property is to be searched:

    Blue iPhone 12

    Case Number: SYS-25-12-0751

    **("Target Device")**

**Target Device** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, 720 E. San Ysidro Blvd., San Ysidro, CA.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 17, 2025, up to and including December 31, 2025:

a. tending to indicate efforts to bring in aliens without lawful status for private financial gain or commercial advantage from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to bring in aliens without lawful status for private financial gain or commercial advantage;

c. tending to identify co-conspirators, criminal associates, or others involved in the bringing in of aliens without lawful status for private financial gain or commercial advantage;

d. tending to identify travel to or presence at locations, such as stash houses, load houses, or delivery points involved in the bringing in aliens without lawful status for private financial gain or commercial advantage;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.